May it please the Court, Diane Burley for Appellant, David Canter. Of course, as the Court is aware, the issue in this case is whether Judge Reel's assessment of Mr. Canter's reasonable under Ameline. We also have to take into account that under Booker that guidelines are deemed advisory, and under Blakely the factors which drive the offense level have to be found by a jury beyond a reasonable doubt. Now in this case, it's very simple. In the excerpts of record, pages 5 and 6, we have a list of the victims and their losses. On page 9 and 10, we have the verdict of guilt as to each of those counts which correspond to those losses. And then at sentencing, in addition to those losses, we have another $240,000-something in losses as to victims on which the defendant was never tried, there were no findings beyond a reasonable doubt, and so on. So I think we're going to have to look at that. Roberts. Are you asking us to say that it was unreasonable for Judge Reel to have decided he wouldn't impose a materially different sentence? Is that what you're saying? Is that what you're saying? Burley. That's what I'm saying. I'm saying, obviously, under Booker, under Booker, the sentence can be driven by factors other than what's in the guidelines. They're not mandatory. Roberts. So your interpretation of an amyline remand is that every time it happens, even if the district judge is very clear that he or she wouldn't have imposed a materially different sentence, we have to go back another step and decide if that's reasonable. Burley. In this case, yes, because how do you – well, I'll ask the court a question. How do you determine what is reasonable? In this case, what is – Burley. That's a question that's been asked for many years. Burley. For many years. Yes, in many contexts. But what is reasonable? What is reasonable when we have approximately $185,000 of loss, which puts us at a seven-level increase for the loss. So we're – and with the scheme that – another specific offense characteristic of the scheme, the defraud, that puts us at level 15, and the district court jumps from 15 to 23, which – and, of course, the district court has the power to depart, but that's not what he did here. Roberts. Let's suppose for a moment that we agree with you. What's the appropriate way, again, to have him tell us why he thought it was reasonable? To tell him why – or tell us why he wouldn't have imposed a materially different sentence? Don't we need to hear what he has to say on that? Burley. I think – no, I don't think that's the remedy. I think the remedy – Roberts. If that's not the remedy, then why did we bother with an amline remand to begin with? Why didn't we just decide? Burley. It seems to me that this court can adjudicate whether something is reasonable or not. And under the circumstances of this case, I think the court can make a determination. Roberts. But haven't we already decided in this case that we couldn't? That's why we sent it back? Burley. Well, isn't reasonableness your standard of review? Roberts. Well, why did we send it back under amline if we thought we could decide it? Burley. I don't think you need to send it back. Roberts. Well, you think we were wrong the first time. We should have just decided it then? Burley. This case was like practicing law on an avalanche, because in the middle of the briefing the first time was when Booker came down. And then when we filed Cantor 2, the second case, amline came down. So we had a situation where the court was trying to make a decision over time when these three – Kagan. Didn't the district court know that the guidelines were advisory? Burley. The district court knew the guidelines were advisory. He gave us nothing to work with. He didn't make any kind of an order as to why he would make the same sentence. He would impose the same sentence. He just said the court is Red Booker and Fan Fan, and the sentence remains as it is. But certainly this – Kagan. What point do you have to put on this? Burley. Well, I think it's a pretty fine point. I mean, we're talking about a lot of money in restitution and a lot of time that's way out of line with what the jury found. I think that that is what makes this unreasonable. Kennedy. But you can't mean that as a general proposition. You must mean it in the context of this case. Burley. In the context of this case, in the context of this case, you have no more – under Blakely, you have no more than enough factors to put us at level 15 of sentencing, criminal history category one. Under Booker, the court – the district court certainly could say I would have done the same thing, but under Anaheim, it still has to be reasonable. And this is not reasonable. Kagan. I think we understand your position. Burley. Okay. The same thing goes as to restitution. The same thing goes as to the client's sentence. Okay? Kagan. We'll hear from the government. Burley. Thank you. May I please have the screen on rebuttal? May I please have the court? Alicia Villarreal on behalf of the United States. Your Honors, I think it's important to understand that the district court acted before it had the benefit of the Ameline 3 decision. It did act on a remand from this court pursuant to U.S. v. Castro. And in Castro, this court essentially told the district court that it should proceed as it saw fit. Very wide discretion. It could either resentence the defendant at that point in time, or it could stay the proceedings until the Booker case was decided. Shortly after this court remanded to the district court under Castro with that broad discretion, then the Supreme Court's decision in Booker was issued. And within a week after the Booker decision was issued, Judge Reel, reading Booker and on the Castro remand, simply issued a minute order. Were there a memorandum of law submitted to him on that? No, there were not, Your Honor. And in a perfect situation, had the court, had the benefit of Ameline, or even the Second Circuit decision in Crosby, where the Second Circuit also advised that at a minimum, you know, that the district court should seek the opinions of counsel, the input, rather, of counsel, but the district court would not have to have a hearing. Here, the judge acted before any of those opinions were issued, simply read Booker and said ---- Was there an argument? I'm sorry? Was there an oral argument? No, there was nothing, Your Honor. It was simply a minute order where the court stated, I have read the Booker opinion. This case is here on a remand under U.S. v. Castro. Taking a look at the guidelines as suggested in the Booker opinion, the same sentence is reimposed. Let me ask you the same question I asked Mr. Cantor's attorney. If we were right in Ameline, why wouldn't the ---- even assuming, assuming just for the sake of discussion at Cantor's entitlement, some relief here, why wouldn't the thing be to send it back to Judge Real to tell us why he wouldn't have imposed a materially different sentence or why he would have? That could happen, Your Honor. However, I'm not sure that it's necessary at this point, because the record is clear that the district court would not impose a different sentence. Here, the district court had the benefit of two sentencing hearings plus a multiple-day trial. It was very well familiar with all of the evidence in the case and the arguments submitted by counsel at two separate sentencing hearings. And so I think that, you know, when the district court made its decision that it was not going to amend its decision, even though it knew that the guidelines were advisory, based upon the record that existed at the time before the district court, and that is the record that the district court would be considering even post-Ameline, it was a reasonable decision for the court to say, I've looked at everything, I've considered the guidelines as advisory, I think the sentence is correct the way it is. I suppose the real, the real, the bottom-line question here is whether it's enough for the trial judge to simply say, I would or I wouldn't, with no more, because I don't think Judge Real gave us any more. He just said I wouldn't impose a materially different sentence. He didn't really give us any reasons. I mean, you're correct. He's had a lot of experience with this case, no doubt about that. Maybe that's enough. I'm not taking a position on that at the moment. But isn't that really what you're saying, that this court should accept as adequate a trial judge's response to an Ameline remand that I wouldn't change my mind? I would say at this point in time, a district judge would have the benefit of the decisions and would, you know, listen to, at least accept briefs from counsel and consider those before answering the question for this court, yes or no, I think there should be a resentencing. But here the district court answered that question. And so the issue is, is there prejudice because counsel didn't have the opportunity to inform the court of their positions as to whether or not the district court should I don't think Ameline goes so far as to say the district judge has to request briefing, does it? That's something that can happen. It says the district court should. But it doesn't say it must. No, it does not. And Crosby also says that the district court should hear from counsel, because counsel may have made different arguments had they been aware that the sentencing guidelines were only advisory. Would the government relish the opportunity to go back to the district court and argue for a higher sentence within the range of what you might be able to persuade the district judge is reasonable? No, Your Honor. The government is satisfied with the two sentencing hearings that the district court had. And I don't believe that if both parties had the opportunity to appear before again, before Judge Reel again, that Judge Reel would impose a different sentence. He has spoken. He has had the benefit of the four-day trial and two sentencing hearings. I doubt that either party would be able to change his mind at this point in time. What was the sentence? It was 51 months. 51 months. And he did order full restitution. And if I may briefly address the restitution question, restitution was proved both at trial through the bank records, a revenue agent testified at trial as to the losses committed by the telemarketing fraud based upon the bank records and based upon the number of victims who had invested in this scheme. So both at trial, the amount of loss was established. And then in the pre-sentence report, the probation officer also took a look at the bank records and identified the victims. Was that disputed in the pre-sentence report? No, it was not. It was not. And it approaches $500,000 or something like that? It's close to. It's $465,000. But the amount was not disputed. It's proved based upon bank records. And under the statute 3664, restitution need only be proved by preponderance of the evidence. And here, certainly, it was proved by a preponderance of the evidence. Thank you. Any further questions? Thank you. As counsel was speaking, I was thinking about our remedies here. And it seems to me that we really don't have enough of a record for the court to make a determination because the district court made this decision before Ameline was decided. And therefore, the reasonableness standard, if the court were to determine whether or not this was reasonable, wanted to, you don't really have enough of a record to do so. There's no dispute as to the underlying facts in the pre-sentence report. And the guidelines were followed. And we sent it back to say, take another look. And he says, no. And now we have, I mean, it would be the same. And now we have Ameline. Doesn't that kind of get you down to a point where you're saying that a guideline sentence may be unreasonable, even though there were no disputes of the facts? I think that the sentence that he imposed, I think once you have the district court looking at all these facts, preferably with briefing by counsel, in view of Ameline, and he makes this kind of, if he makes the same determination, and that is unreasonable, and then this court can find that it is unreasonable. Ms. Villarreal made a good point. The purpose of the briefing, if it is, I don't think Ameline requires it. It's suggested. It is suggested. But the purpose. I have had a couple of cases. Well, in any event, this Court will decide what, but assuming that in this instance it should be had, because clearly Ameline says that's the better procedure or a recommended procedure, what is it that could be said on behalf of Cantor that would change the sentence? I mean, aren't we really just arguing about this technical issue, whether the guidelines are mandatory? It's hard to see what arguments he's got to make. We're talking about what the jury found beyond a reasonable doubt. I guess I'm asking, what would you put in that brief that, in effect, would be presented to Judge Real, that's different from what was presented to him twice before? In light of Ameline, it would be argued that, given Blakely, that it is unreasonable, for instance, to impose restitution excess of $185,000 because that was the only restitution based on jury findings. Well, but that overlooks Booker, I think. It overlooks Booker, but it doesn't overlook Apprendi, and it doesn't overlook Blakely. I think they have to be integrated. I have nothing further. Thank you. The case just argued is submitted for decision. The first case on the calendar, Ahmed v. Gonzales, is submitted on the briefs. It is so ordered, as is the next case, Najiullah v. Newland, submitted on the briefs. We'll hear the next case for argument, Miles v. Rowe.
judges: Schroeder, Leavy, Sedwick